UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50027-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING IN PART |
| vs. | ) | AND REJECTING IN PART |
| | ) | REPORT AND |
| JESE HERNANDEZ-MENDOZA | ) | RECOMMENDATION ON |
| and EDDIE MARTINEZ, | ) | DEFENDANTS' MOTIONS |
| | ) | TO SUPPRESS |
| Defendants. | ) | |

Defendants, Jese Hernandez-Mendoza and Eddie Martinez, are each charged with one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) and two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) & (B). Docket 14. Both Hernandez-Mendoza and Martinez move to suppress any evidence viewed and seized and any statements stemming from their detention and arrest in Wyoming and South Dakota on February 29, 2008. Dockets 31,33.

The court referred the motions to suppress to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge recommends that this court grant in part and deny in part defendants' motions to suppress. More specifically, the magistrate judge recommends suppression of Martinez's statements in response to Trooper Brian Swets' question as to why the carpet

and trim in the vehicle were torn up and the colloquy that followed, the physical evidence taken from defendants' vehicle, and the statement by Martinez to Trooper Boumeister that the overnight bag contained both his and Hernandez-Mendoza's clothing for the trip to Iowa.  Docket 59 at 65.  The magistrate judge further recommends that all other statements and evidence should not be suppressed.  Both defendants and the government object to certain portions of the report and recommendation of the magistrate judge.

## STANDARD OF REVIEW

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995).  28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.; see also Fed. R. Civ. P. 72(b).  After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court adopts in part and rejects in part the report and recommendation of the magistrate judge as detailed below.

**DISCUSSION**

**I.    Government's Objections**

The government objects to the magistrate judge's conclusion that Trooper Swets unjustifiably extended the stop and that under the Fourth Amendment, the extension tainted the evidence that was found during the stop. The government argues that Trooper Swets' questions posed to defendants about drugs were a minimally intrusive manner of addressing his reasonable suspicion. The government further argues that the fact that Martinez looked away and shook his head without making an audible answer in response to Trooper Swets' question about methamphetamine provided additional grounds to extend the investigation.

When a law enforcement officer lawfully stops a driver, he is "entitled to conduct an investigation 'reasonably related in scope to the circumstances which justified the interference in the first place.' " United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (quoting Terry v. Ohio, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). For example, "[o]nce [an] officer makes [a] traffic stop, the officer may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car." United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003). The officer may also run computer checks to determine whether the driver has a criminal history or outstanding arrest warrants. Jones, 269 F.3d

at 924. Additionally, the officer may question passengers to verify information provided by the driver. United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004). Here, Trooper Swets lawfully stopped defendants for speeding on Interstate 90. Trooper Swets then abided by Eighth Circuit precedent and general procedure during the traffic stop when he asked defendants who owned the vehicle, how defendants were acquainted, and where defendants were going.

Under certain circumstances, "[a]n officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for a traffic stop and detain a vehicle and its occupants for further investigation." United States v. Johnson, 285 F.3d 744, 750 (8th Cir. 2002). "Reasonable suspicion requires 'particularlized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.' " United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008) (quoting United States v. Donnelly, 475 F.3d 946, 952 (8th Cir. 2007)). "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002) (quoting United States v. Dodson, 109 F.3d 486, 488 (8th Cir. 1997)). Also, "[t]hough each factor giving rise to suspicion

might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed together." Id.

The Eighth Circuit has determined that when forming reasonable suspicion, an officer may rely on information provided by other officers. In United States v. Riley, 927 F.2d 1045 (8th Cir. 1991), two detectives in Los Angeles saw the defendant in the airport and observed several criminal indicators. The detectives contacted a detective in Little Rock and informed her of their observations and their suspicions based upon those observations. Following up on the detective call, Little Rock police officers went to the airport with a drug sniffing dog and located the defendant's bag behind the baggage claim. The dog alerted to the defendant's suitcase and the defendant was eventually arrested and convicted. Id. at 1046-47. The defendant argued that before an officer can form a reasonable suspicion, he or she must make personal objective observations which form the basis of that reasonable suspicion. Id. at 1048-49. The Eighth Circuit rejected the defendant's argument, stating that "cases are replete with situations in which one officer furnishes information to another, and while this frequently involves two officers from the same police force, it may also involve an officer in one locality communicating with one in another." Id. at 1049. The Eighth Circuit further stated that "undue restrictions" should not be placed "on the ability of officers in one city to pass vital information on to officers in another city." Id.

Here, Trooper Swets continued to detain defendants after he stopped them for speeding based upon his own personal observations. Trooper Swets personally observed that there was an overpowering odor of air freshener coming from the vehicle, that the windows of defendants' vehicle were down, that defendants had three cell phones with them, and that when Martinez was asked whether he had methamphetamine, he looked away and simply shook his head without making an audible answer. Trooper Swets also relied on the information relayed by Captain Hodge, namely that defendants were driving a third party's vehicle, that they could not give the name of the vehicle owner, that they had insufficient luggage for a one-week trip, that a drug dog had alerted to the presence of drugs in the vehicle, that defendants had multiple cell phones with them, that there was a tube of silicone and two screwdrivers on the floor of the vehicle, and that defendants' reaction when asked about the presence of methamphetamine in the vehicle was "suspicious" because they looked away when answering "no." Just as the Little Rock officers in <u>Riley</u> were able to rely on the observations of the Los Angeles detectives to form the reasonable suspicion needed to subject the defendant's suitcase to a dog sniff, Trooper Swets was allowed to rely on the above-mentioned observations of Captain Hodge to form the reasonable suspicion required to expand the scope of the inquiry beyond the reason for the traffic stop and detain the vehicle and its occupants for further investigation.

Further, distinguishable from this case are cases in which courts have found that the Fourth Amendment is violated when successive stops of a suspect based on the same information occurs. In those cases, the officers involved in the second stop pulled the defendants over based solely on information received from other officers and did not observe any new law violation that would initially justify the stop. See, e.g., United States v. Garcia, 23 F.3d 1331 (8th Cir. 1994) (finding that the second stop was not based upon any violation of the traffic laws and that there was no reasonable suspicion to justify the second stop) and United States v. Peters, 10 F.3d 1517 (10th Cir. 1993) (finding that the officer stopped the defendants' vehicle because the defendants were acting nervous and that there was no basis in the record to support the claim that the second traffic stop was based upon reasonable suspicion). In contrast, in this case, Trooper Swets observed defendants commit a traffic violation, thereby justifying the second traffic stop of defendants' vehicle. Accordingly, after considering the totality of the circumstances, the court finds that Trooper Swets did have reasonable suspicion of criminal activity and, therefore, he lawfully expanded the scope of inquiry beyond the reason for the traffic stop and detained the vehicle and defendants for further investigation.

Even if the facts were insufficient to result in a reasonable suspicion, the extension of the stop was *de minimus* and did not violate the Fourth

Amendment. "[D]og sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimus* intrusions on the defendant's Fourth Amendment rights." United States v. Alexander, 448 F.3d 1014, 1016 (8th Cir. 2006). In fact, "when a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 649 (8th Cir. 1999).

 Here, the videotape of Trooper Swets' traffic stop of defendants indicates that approximately six minutes lapsed from the time Trooper Swets pulled defendants' vehicle over to the time Trooper Swets' drug dog, Karlo, was deployed. Further, when Trooper Swets initially pulled defendants over, Karlo was with him in his trooper vehicle and, therefore, Trooper Swets had Karlo at his immediate disposal and did not have to wait for another officer to bring a drug dog to the site. Based upon these facts, the court finds that the brief extension of defendants' detention for the purpose of a canine sniff of the exterior of the vehicle was a *de minimus* intrusion on defendants' personal liberties and as a result it did not violate the Fourth Amendment. Accordingly,

the court finds that defendants' motions to suppress all physical evidence found in the vehicle should be denied and such evidence is admissible at trial.

## II.     Defendants' Joint Objections

### A.     Factual Findings

Defendants object to certain factual findings made by the magistrate judge.  First, defendants point out that one of the witnesses who testified in the hearing was "Thomas Baloun, a paralegal and investigator with the Federal Public Defender's Office" rather than "Brian Balloon, a paralegal and private investigator with the Federal Public Defender's Office," as appears in the magistrate judge's report and recommendation.  The court finds that "Thomas Baloun, a paralegal and investigator with the Federal Public Defender's Office" is the proper description of the witness that testified at the suppression hearing.  The court finds, however, that this fact does not affect the disposition of defendants' motion to suppress.

Second, defendants object to the lack of completeness of the facts surrounding their traffic stop in Wyoming.  They request that the court include in the facts that officers were unable to locate any drugs in their vehicle after searching it for one hour on the roadside of Interstate 90, that Trooper Boumeister asked defendants if they would be willing to follow him and Captain Hodge to the state shop approximately five miles away from their current location, and that the defendants believed that they had to follow

Trooper Boumeister to the Highway Patrol shop.  Based upon Captain Hodge's testimony at the suppression hearing, the court finds that Captain Hodge helped Trooper Boumeister search defendants' vehicle at the scene of the stop on Interstate 90 and that this particular search lasted approximately one hour. After searching the vehicle at the scene of the stop, Trooper Boumeister and the lieutenant made the decision to go to the Highway Patrol shop.  At the shop, the officers continued to search the vehicle.  The court finds, however, that there was no evidence presented at the hearing to support defendants' contention that when asked to drive to the Highway Patrol shop, defendants "believed" they had no choice.

Third, defendants also object to the clarity of the factual circumstances relating to the first call Captain Hodge made to Trooper Swets.  They request that the court clarify that Captain Hodge first called Trooper Swets while Captain Hodge and Trooper Boumeister were still searching defendants' vehicle on the roadside of Interstate 90.  After reviewing the video of the Wyoming stop that was admitted into evidence during the suppression hearing, the court finds that at approximately 2:02 p.m. Captain Hodge called Trooper Swets while he and Trooper Boumeister were searching defendants' vehicle on the side of Interstate 90.

Fourth, defendants object to the magistrate judge's findings of facts with regard to Trooper Swets' cell phone usage when observing and stopping them.

They argue that the video demonstrates that Trooper Swets remained on his cell phone, actively engaged in conversation while he observed their vehicle traveling at 80 miles per hour, turned on his radar unit, locked his radar unit, turned on his emergency lights, drove his vehicle through the median of Interstate 90, and began his eastbound pursuit of their vehicle.  Defendants further argue that it was not until Trooper Swets was completely turned around and driving east that he ended his cell phone call.

      The video of the South Dakota traffic stop that was admitted into evidence during the suppression hearing only includes the events taking place after Trooper Swets drove through the median of Interstate 90 and began traveling eastbound on Interstate 90 in pursuit of defendants' vehicle.  Based upon the video, the court finds that Trooper Swets was engaged in a conversation at the time he was pulling out of the median to travel eastbound on Interstate 90.  Further, Trooper Swets ended this cell phone conversation as he began to travel eastbound on Interstate 90 in pursuit of defendants' vehicle.

      Fifth, defendants object to the magistrate judge's finding that Trooper Allen waited with them in his patrol vehicle until he received instructions to take them into the building.  They argue that Trooper Allen did not remain in his patrol vehicle with them because although he is not seen exiting his patrol vehicle on the video, he can be heard releasing his seatbelt and opening his vehicle door.  Defendants also maintain that because only one vehicle door is

heard opening when Hernandez-Mendoza is first removed from the vehicle, Trooper Allen was not in his vehicle at this time. The court notes that while the magistrate judge found that Trooper Allen waited with defendants in his patrol vehicle, the magistrate judge also found that Trooper Allen got out of the vehicle at one point. The magistrate judge further found that while Trooper Allen was outside the vehicle, defendants had a conversation with each other in Spanish that was recorded on the vehicle's video recorder. Accordingly, the court finds that the magistrate judge sufficiently addressed this factual situation and correctly determined Trooper Allen was not in his vehicle the entire time defendants were in the patrol vehicle.

### B.    Credibility of Trooper Swets

Defendants object to the magistrate judge's finding that Trooper Swets was credible when testifying with respect to the reasonable suspicion for the traffic stop in South Dakota. They argue that it was not possible that Trooper Swets was able to hold his cell phone in his left hand and engage in a telephone conversation, while steering his vehicle, holding a radar monitor, turning on his radar unit, locking the speed of the vehicle, and navigating his own vehicle with his right hand. They further argue that Trooper Swets' demeanor during the suppression hearing demonstrates his lack of credibility. They emphasize that no physical evidence was presented concerning the radar

machine's locked-in speed, except for Trooper Swets' testimony and because his testimony is not credible, there was no basis for the initial stop.

After reviewing the recording of the suppression hearing, the court finds credible Trooper Swets' testimony that he locked defendants' vehicle on his radar traveling at 78 miles an hour. The fact that Trooper Swets may have been doing multiple tasks when running his radar does not negate his credibility. Additionally, there was no evidence presented at the suppression hearing that contradicted Trooper Swets' testimony in relation to use of his speed radar. Moreover, the magistrate judge found Trooper Swets' testimony credible. Because the magistrate judge was able to observe Trooper Swets' testify, she is in a better position to opine on Trooper Swets' credibility. As such, the court gives deference to the magistrate judge's conclusions regarding Trooper Swets' testimony. Based upon all the aforementioned reasons, the court finds Trooper Swets' testimony credible and, therefore, finds that he was justified in initially stopping defendants' vehicle.

### III.  **Hernandez-Mendoza's Objections**

Hernandez-Mendoza objects to the magistrate judge's decision not to suppress any of his statements. Hernandez-Mendoza argues that his Wyoming stop statements and his South Dakota pre- and post-formal arrest statements are inadmissible. He argues that such statements were obtained in violation of

his rights under <u>Miranda</u> and that they were not made knowingly, intelligently, and voluntarily.

The court adopts the magistrate judge's report and recommendation in relation to the suppression of Hernandez-Mendoza's statements.  With respect to Hernandez-Mendoza's statements during the Wyoming stop, the court finds that his statements should not be suppressed.  <u>Miranda</u> warnings were not required before Hernandez-Mendoza responded to standard questions associated with the initial traffic stop because he was not in custody at the time.  Additionally, the statements made after Trooper Boumeister issued the warning ticket and told Hernandez-Mendoza that he was free to leave were consensual statements and, thus, did not require <u>Miranda</u> rights.  With respect, to Hernandez-Mendoza's statements during the South Dakota stop, the court also finds that his statements should not be suppressed.  As noted above, <u>Miranda</u> warnings were not required when the trooper asked Hernandez-Mendoza questions associated with the initial traffic stop.  Further, the conversation between defendants, while they were in Trooper Allen's vehicle, was voluntary and was not prompted by any form of police interrogation, thereby making a <u>Miranda</u> warning unnecessary.

### IV. Martinez's Objections

Martinez objects to the magistrate judge's conclusion that the statements he made to Division of Criminal Investigation (DCI) Agent Chad Evans should not be suppressed. Martinez argues that he never would have made statements to Agent Evans if Trooper Swets had not improperly prolonged the traffic stop. Martinez further argues that although Agent Evans may have advised him of his <u>Miranda</u> rights prior to the statements, he would not have been in the position to give those statements without the actions of Trooper Swets and, therefore, they are fruits of the poisonous tree and should be suppressed.

As mentioned above, the court finds that Trooper Swets' search of defendants' vehicle did not violate the Fourth Amendment. Therefore, the continued detention of defendants was legal and Martinez's statements to Agent Evans are not fruits of the poisonous tree. Moreover, Martinez was advised of his <u>Miranda</u> rights before he made those statements to Agent Evans. Under the circumstances of this case, the court finds that the statements Martinez made to Agent Evans should not be suppressed.

### V. Other Portions of Report and Recommendation

Neither defendant nor the government objects to the other portions of the report and recommendation and they are hereby adopted by this court.

Based on the foregoing, it is hereby

ORDERED that the court adopts in part and rejects in part the Report and Recommendation of the Magistrate Judge (Docket 59) as supplemented herein and, therefore, defendants' motions to suppress (Dockets 31 and 33) are granted in part and denied in part.

Dated August 5, 2008.

                                      BY THE COURT:

                                      /s/ *Karen E. Schreier*
                                      KAREN E. SCHREIER
                                      CHIEF JUDGE